**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **HOWARD GENTRY, in his official capacity as Criminal Court Clerk for the Metropolitan Government of Nashville and Davidson County,** | ) ) ) ) ) | |
| **and** | ) ) | |
| **THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) ) | **Case No. 3:24-cv-00316 Judge Aleta A. Trauger** |
| **TENNESSEE DEPARTMENT OF TREASURY and DAVID H. LILLARD, JR., in his official capacity as State Treasurer,** | ) ) ) ) ) | |
| **and** | ) ) | |
| **THE NASHVILLE COMMUNITY BAIL FUND,** | ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM

In this lawsuit, plaintiffs Howard Gentry, in his official capacity as Criminal Court Clerk

for the Metropolitan Government of Nashville and Davidson County, and the Metropolitan

Government of Nashville and Davidson County (collectively referred to herein, in the singular, as

the "plaintiff" or Metro) seek a judicial declaration "as to whether, for purposes of determining

which governmental entity is responsible for payment of an award for attorneys' fees under 42

U.S.C. § 1988, a criminal court clerk acts as an agent of the State and not as a local official when

he enforces a state court rule that serves purely a state function." (Am. Compl., Doc. No. 23 ¶ 44.) The plaintiffs have named as defendants the Nashville Community Bail Fund ("NCBF"), which, as discussed below, previously obtained a judgment and an award of attorney fees in a separate lawsuit against Howard Gentry in his official capacity as Criminal Court Clerk. The plaintiffs in the present case have also sued the Tennessee Department of Treasury and David H. Lillard in his official capacity as State Treasurer (collectively, the "state defendants"), neither of which was a defendant in the underlying action brought by NCBF.

Now before the court is the Motion to Dismiss Amended Complaint under Rule 12(b)(1) and Rule 12(b)(6), filed by the state defendants. (Doc. No. 25.) The motion, supported by a Memorandum of Law (Doc. No. 26), seeks dismissal of the Amended Complaint against them based on lack of subject matter jurisdiction, sovereign immunity, and the statute of limitations. Metro opposes the motion (Doc. No. 27), and the state defendants have filed a Reply (Doc. No. 28). For the reasons set forth herein, the court will dismiss the case for lack of subject matter jurisdiction, without reaching the statute of limitations issue.

## I.    PROCEDURAL HISTORY

In February 2020, NCBF, a Nashville-based nonprofit entity, filed suit against Howard Gentry, in his official capacity as Clerk of the Criminal Court of the Twentieth Judicial District of Tennessee ("Clerk"), challenging the constitutionality of local rules adopted by the judges of the Twentieth Judicial District and implemented by the Clerk, requiring that a third party posting cash bail for a criminal defendant consent to the money's being garnished to pay the defendant's fines, fees, and other case-related liabilities. Complaint, *Nashville Cmty. Bail Fund v. Gentry*, No. 3:20-cv-00103 ("*NCBF v. Gentry*") (M.D. Tenn. Feb. 5, 2020). The court granted NCBF a preliminary injunction, enjoining the Clerk from enforcing the challenged local rules during the pendency of the action. Order, *NCBF v. Gentry* (M.D. Tenn. Mar. 17, 2020). In making that ruling, the court

expressly held that "the Criminal Court—and, by extension, the Clerk's Office—is an arm of the State of Tennessee, and [the Clerk] is its officer or employee," at least for some purposes. Memorandum at 11 n.5, 17–18, *NCBF v. Gentry* (M.D. Tenn. Mar. 17, 2020). Following that ruling, the Department of Law for the Metropolitan Government of Nashville and Davidson County withdrew as counsel of record for the Clerk on the basis that the Metro Charter only authorized it to represent Metro offices and officials, and it formally requested that the Tennessee Attorney General ("AG") enter an appearance on the Clerk's behalf. (*See* Doc. Nos. 23-1, 23-2.) The AG declined, and the Clerk was then "forced to secure private counsel to represent him for the remainder of the litigation." (Am. Compl., Doc. No. 23 ¶ 18.)

The court ultimately entered a Consent Judgment and Decree, finding the challenged rules unconstitutional and permanently enjoining their enforcement. Consent Judgment & Decree, *NCBF v. Gentry* (M.D. Tenn. Dec. 9, 2020). The State of Tennessee was never named as a party in that action and never agreed to furnish the Clerk with representation in that case.

NCBF thereafter filed a Motion for Attorney Fees and Costs, to which the Clerk did not respond on his own behalf. Rather, as the court noted in addressing the motion, Metro and the State of Tennessee—both non-parties—filed Responses, both asserting that the Clerk was an officer or employee of the other entity and both denying responsibility for any fees assessed against the Clerk in his official capacity. Although the court ultimately granted the motion, awarding fees to NCBF against the Clerk in his official capacity (that is, against the Clerk's Office), the court expressly declined to address the matter of whether the State or Metro should be on the hook for paying those fees:

> The court's duty here is to assess fees against the losing party in this case, and that is the Clerk's Office. It is not up to the court to resolve any internal or intergovernmental budgetary disagreements about where that money will come from . . . . The Clerk's Office of the Criminal Court of the Twentieth Judicial

> District is the sole non-prevailing party in this case and will therefore be obligated to pay the attorney's fees and costs awarded. *How* the Clerk will ultimately pay those attorney's fees—including whether it will use State dollars to do so—is not something that the court is currently in a position to resolve.

Memorandum at 11, *NCBF v. Gentry* (M.D. Tenn. Sept. 13, 2021). The court reiterated that holding when it declined a similar invitation to wade into that dispute when NCBF filed a Motion to Enforce Judgment, asking the court to order the State of Tennessee to pay the attorney fees awarded to NCBF against the Clerk's Office. *See* Memorandum & Order at 2, *NCBF v. Gentry* (M.D. Tenn. Feb. 23, 2022). The court further observed that "[t]he way that dollars move around between Tennessee governmental entities is, for the most part, an issue of state law." *Id.* At that time, the Clerk was still pursuing state administrative proceedings in an effort to resolve the budgetary dispute, and the court denied NCBF's request for relief "without prejudice to filing any motion or cause of action against the State of Tennessee after the conclusion of the proceedings currently ongoing before the Board of Claims." *NCBF v. Gentry*, No. 3:20-cv-00103, 2022 WL 570435, at *2 (M.D. Tenn. Feb. 23, 2022). However, the court did not find or even imply that it might have jurisdiction over an action by Metro against the State to determine which of them might be responsible for funding the attorney fee award against the Clerk's Office.[1]

As now set forth in the Amended Complaint filed in this case, the Criminal Court Clerk's Office for the Twentieth Judicial District does not have sufficient funds in its operating budget to pay the attorney fees. Following the conclusion of *NCBF v. Gentry*, the Clerk sought to obtain the funds from the State of Tennessee by sending a letter to the AG's Office. The AG denied the request, reiterating that the State's position was that the Clerk was a county official and that the

---

[1] And the court expresses no opinion now as to whether it would have jurisdiction over a case brought by NCBF against the State of Tennessee to enforce the attorney fee award.

State of Tennessee was not a party to the NCBF lawsuit. (Am. Compl., Doc. No. 23 ¶¶ 26, 27; *see also* Doc. Nos. 26-2, 26-3, 26-4.)

After being thwarted again by the AG's Office, the Clerk pursued a claim with the Tennessee Board of Claims—the same administrative action referenced in the Memorandum & Order denying the Motion to Enforce Judgment entered in *NCBF v. Gentry*—attempting to obtain the funds to pay the award. (Doc. No. 23 ¶ 28.) The Board of Claims denied the request on June 23, 2023, finding that the Clerk was not a state employee for purposes of the claims process. (*Id.*) Metro, thus far, has not responded to the Clerk's request for a supplemental appropriation. (*Id.* ¶ 29.) And counsel for NCBF has indicated that it seeks to take post-judgment discovery from the Clerk's Office regarding its ability to pay the attorney fee award. (*Id.* ¶ 30.) In short, the attorney fee award in *NCBF v. Gentry* has "resulted in a standoff between the State, the Clerk's Office, and Metro, with NCBF left holding the judgment for the attorneys' fee award with no one willing (or able, in the case of the Clerk's Office) to pay it." (*Id.* ¶ 31.)

Metro then initiated this lawsuit against the state defendants and NCBF in March 2024, seeking resolution of the question of who is responsible for funding the attorney fee award. (Doc. No. 1.) After the state defendants responded by filing a Motion to Dismiss the original Complaint, Metro filed an Amended Complaint. The Amended Complaint seeks a declaration "as to whether, for purposes of determining which governmental entity is responsible for payment of an award for attorneys' fees under 42 U.S.C. § 1988, a criminal court clerk acts as an agent of the State and not as a local official when he enforces a state court rule that serves purely a state function." (Doc. No. 23 ¶ 44.) The state defendants then renewed their Motion to Dismiss, asserting, as they had in response to the original Complaint, that the court lacks subject matter jurisdiction over the dispute, that the state defendants are entitled to sovereign immunity, and that the claim is time-barred.

Metro disputes each of these arguments. The court reaches only the question of subject matter jurisdiction.

## II.     LEGAL STANDARD

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here. U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Whether the court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." (citation omitted)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th

Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)).

The state defendants' sovereign immunity argument also falls within the scope of Rule 12(b)(1). The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Sixth Circuit has confirmed that "[t]he sovereign immunity guaranteed by this Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)).

## III.    DISCUSSION

As set forth above, subject matter jurisdiction is a threshold issue that the court must address and resolve prior to reaching the merits of the case. *Steel Co.*, 523 U.S. at 94–95; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The state defendants argue that neither federal question jurisdiction nor diversity jurisdiction exists in this case and that they are entitled to Eleventh Amendment immunity. As these are both jurisdictional arguments, the court may address them in any order. *Accord Nessel ex rel. People of Mich. v. Enbridge Energy, LP*, 104 F.4th 958, 964 (6th Cir. 2024) ("Although federal courts must resolve questions of subject-matter jurisdiction before deciding a case on the merits, we have 'leeway to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)).

## A.       Sovereign Immunity

"[O]n its face the Eleventh Amendment bars 'any suit in law or equity, commenced or prosecuted against one of the United States[.]'" *Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956, 964 (6th Cir. 2013) (quoting U.S. Const. am. XI). The Eleventh Amendment thus operates as a complete bar to suits against a state or a state agency unless one of three exceptions applies: (1) the state has waived immunity by consenting to the suit; (2) Congress has expressly abrogated the states' sovereign immunity with respect to the particular cause of action; or (3) the doctrine set forth in *Ex parte Young*, 209 U.S. 123 (1908), applies. *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017).

Tennessee has not consented to this suit; nor has Congress abrogated the state's immunity to suits under state law or under 42 U.S.C § 1983 (or § 1988). *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 733–34 (6th Cir.), *cert. denied*, 143 S. Ct. 527 (2022). Thus, under the Eleventh Amendment, the Tennessee Department of Treasury, as a state agency, has sovereign immunity and is absolutely immune from this suit. The only remaining question is whether *Ex parte Young* applies to the suit against David H. Lillard in his official capacity as State Treasurer.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985)). Under the legal fiction espoused in *Ex parte Young*, however, "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst*, 465 U.S. at 102. In some circumstances, such suits are not barred by sovereign immunity. *Ex parte Young*, however, "has not been provided an expansive interpretation." *Id.* To fall within the *Ex parte Young* exception, a claim must be brought against a state official in his

official capacity, and the claim "must seek prospective relief to end a continuing violation of federal law." *Russell*, 784 F.3d at 1047 (quoting *Diaz v. Mich. Dep't of Corrs.*, 703 F.3d 956, 964 (6th Cir. 2013)); *see also Skatemore, Inc.*, 40 F.4th at 733 ("*Ex parte Young* permits a private party to seek prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights.").

The state defendants argue that the claim against the state treasurer in his official capacity does not fall within the scope of *Ex parte Young* because "Plaintiffs do not allege that Defendant Lillard has violated or will violate federal law." (Doc. No. 26, at 22.) Metro responds by insisting that sovereign immunity does not protect Lillard because "the underlying claim in this action is the enforcement of a federal court's order for an attorneys' fee award." (Doc. No. 27, at 5.)

It is true, as Gentry argues, that NCBF previously obtained an injunction against the Clerk of the Criminal Court for the Twentieth Judicial District of Tennessee and an attorney fee award against the Clerk's Office under 42 U.S.C. § 1988, which authorizes attorney fees to a prevailing party in a suit under 42 U.S.C. § 1983. The original suit against the Clerk, as a state official in his official capacity, fell within the scope of *Ex parte Young*, as did the ancillary order awarding attorney fees. *Accord Kentucky v. Graham,* 473 U.S. 159, 170–71 (1985) ("[W]hen a State in a § 1983 action has been prevailed against for relief on the merits . . . because state officials properly were sued in their official capacity, fees may also be available from the State under § 1988." (citing *Hutto v. Finney*, 437 U.S. 678 (1978))).

It does not follow, however, that *this* action falls within the scope of *Ex parte Young*. On its face, it names a state official in his official capacity, but, as the state defendants argue, it does not state a claim under § 1983, and it does not seek to enjoin Lillard from continuing to violate federal law. *See Russell*, 784 F.3d at 1047. Moreover, Metro's protestations to the contrary

notwithstanding, the present suit cannot be characterized as an action to enforce a prior judgment or as a declaratory action in anticipation of a substantive enforcement action because, in the underlying suit, the parties were NCBF and the Clerk in his official capacity, representing the Clerk's Office. NCBF obtained a judgment against the Clerk, making the Clerk's Office the entity liable for payment of the attorney fee award. Although the court determined that the Clerk was an arm of the state, at least for some purposes, neither Metro nor the State was technically a party to the prior action. Metro's present suit against the State is, therefore, only tangentially related to the previous suit, regardless of the fact that NCBF is also named as a defendant in the present case.

While Metro insists that it would be "an absurd result if the State Defendants were able to avoid responsibility for that judgment by now claiming they [have sovereign immunity]" (Doc. No. 27, at 6), NCBF *did not obtain a judgment against the State*. It obtained a judgment against the Clerk and an attorney fee award against the Clerk's Office. In granting NCBF's attorney fee motion, the court expressly declined to resolve the dispute between Metro and the State as to which entity should be responsible for funding the Clerk's Office for purposes of paying those fees. As the court stated in that ruling:

> [Metro and the State] want the court to adjudicate a presumed disagreement between the Clerk's Office and the State's general government regarding whether state dollars should be made available to the Clerk's Office to pay its liability. And there would certainly be nothing remarkable about state dollars going toward an arguably local purpose, regardless of whether one considers the Clerk's Office to be an arm of the state or not . . . . What would be remarkable, however, would be if this court waded into that conflict, despite the fact that the State itself has not been made a party to this litigation and no claim on behalf of the Clerk has been pleaded against it.

Memorandum at 10–11, *NCBF v. Gentry* (M.D. Tenn. Sept. 13, 2021).

In short, this is an entirely new lawsuit, involving governmental entities that were not named in *NCBF v. Gentry*, seeking relief that is entirely, as far as the court can tell, governed by state law. The Tennessee Department of Treasury is absolutely immune from this suit under the

Eleventh Amendment, and the claim against Lillard in his official capacity does not fall within the narrow exception carved out by *Ex parte Young*. The claim against the state defendants is subject to dismissal based on sovereign immunity and lack of subject matter jurisdiction.

**B.     Lack of Subject Matter Jurisdiction**

For largely the same reasons, the case as a whole, including the claim against NCBF,[2] is subject to dismissal for lack of subject matter jurisdiction. This is an entirely new lawsuit, only tangentially related to the underlying case, *NCBF v. Gentry*. It is not premised upon diversity jurisdiction, and it does not state a colorable claim under federal law. Instead, it asks the court, again, to wade into the issue of which governmental entity should be required to fund the attorney fee award entered against the Clerk's Office.[3] This is a state law question that the court has already declined, twice, to address. The court lacks subject matter jurisdiction over this question.

NCBF has not joined in the Motion to Dismiss and clearly has an interest in resolving the question of whether the State or Metro should provide funding for the fees awarded against the Clerk's Office. However, the court finds *sua sponte* that it lacks jurisdiction over this action in its entirety, because any substantive claim NCBF might bring against Metro would be governed by state law rather than federal law. *See Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1064

---

[2] The Amended Complaint does not actually state a claim against NCBF, nor does it even seek to enjoin NCBF from seeking to enforce the attorney fee award against Metro (or against Gentry in his capacity as a county official).

[3] As set forth above, the Amended Complaint purports to seek a declaration that, "for purposes of determining which governmental entity is responsible for payment of an award for attorneys' fees under 42 U.S.C. § 1988, a criminal court clerk acts as an agent of the State and not as a local official when he enforces a state court rule that serves purely a state function." (Doc. No. 23 ¶ 44.) But this is not really the issue. The court entered an attorney fee award against the Clerk's Office and made it clear that the Clerk's Office is the entity responsible for paying the fees—and that the question of "how this liability should be paid does not necessarily hinge solely on the question of whether the Clerk was a 'state' or 'local' entity as a matter of federal law." Memorandum & Order at 2, *NCBF v. Gentry* (M.D. Tenn. Feb. 23, 2022).

(6th Cir. 2014) ("'Subject-matter jurisdiction can never be waived or forfeited,' and courts are obligated to consider *sua sponte* whether they have such jurisdiction." (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)). Accordingly, the court will dismiss the case as a whole, without prejudice.

## IV.    CONCLUSION

For the reasons set forth herein, the state defendants' Motion to Dismiss (Doc. No. 25) will be granted, and this case will be dismissed, in its entirety, for lack of subject matter jurisdiction. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge